UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

STATE OF NEW YORK, by
ATTORNEY GENERAL ANDREW M. CUOMO,

STATE OF ILLINOIS, by
ATTORNEY GENERAL LISA MADIGAN,

STATE OF MICHIGAN, by : COMPLAINT
ATTORNEY GENERAL MIKE COX,
: Civ. No. _____

                Plaintiffs,        : JURY TRIAL DEMANDED

        v.

HERMAN MILLER, INC.,

                Defendant.

------------------------------------x

**08 CV 02977**

(Stamp: MAR 21 2008 U.S.D.C. S.D.N.Y. CASHIER)

The Plaintiff States of NEW YORK, ILLINOIS and MICHIGAN (the "States" or "Plaintiffs") allege as follows:

1.  The States bring this action under the antitrust laws of the United States and of the States, to challenge an illegal resale price maintenance scheme orchestrated by Herman Miller for the Home ("HMH"), a division of Herman Miller, Inc. ("Herman Miller"), and implemented, in whole or in part, through combinations, or agreements with others.

1

2. The purpose of this scheme was to unlawfully stabilize and artificially raise retail prices and retail price levels and to reduce retail price competition for HMH's Aeron™ chairs ("Aeron").

3. HMH stabilized the retail price and retail price levels of Aeron chairs and insured that they were sold at artificially inflated prices through its "Suggested Retail Price" ("SRP") policy. Under the SRP policy, HMH retailers had to agree with HMH not to advertise below HMH's dictated prices for Aeron chairs in any medium where prices can be seen by consumers.

4. As a result of these anticompetitive practices, consumers were denied the benefits of unrestrained price competition on the Aeron chairs and Aeron prices to consumers were raised above their competitive levels.

## JURISDICTION AND VENUE

5. This action arises under § 1 of the Sherman Act, 15 U.S.C. § 1, and § 16 of the Clayton Act, 15 U.S.C. § 26. This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1331 and 1337.

6. This complaint also alleges violations of state antitrust laws, and seeks injunctive relief, civil penalties and related relief under those state laws. This Court has jurisdiction over those claims under 28 U.S.C. § 1367 and the principles of supplemental jurisdiction. The federal and state law claims arise from a common nucleus of operative facts, and the entire suit commenced by this Complaint constitutes a single action that would ordinarily be tried in one judicial proceeding. The exercise of supplemental jurisdiction will avoid

duplication and a multiplicity of actions, and will promote the interests of judicial economy, convenience and fairness.

7. This Court further has personal jurisdiction over Herman Miller under 15 U.S.C. § 22 and N.Y. C.P.L.R. 302(a). Herman Miller has: (a) transacted business in New York State; (b) committed tortious acts within the state; and/or (c) committed tortious acts without the state causing injury within the state. The claims alleged in this Complaint arise out of such business or tortious acts.

8. Venue in this district is proper under 28 U.S.C. § 1391(b), (c) and (d), 15 U.S.C. § 22 and N.Y. C.P.L.R. §§ 503 and 509.

## THE PARTIES

9. Plaintiff States bring this action in their sovereign capacity, on behalf of their States' economy and general welfare, and/or as otherwise authorized by law, to enforce federal and state antitrust laws, and to secure appropriate equitable relief.

10. Defendant Herman Miller is a corporation organized under the laws of Michigan, with its principal place of business in Zeeland, Michigan. At all relevant times, Herman Miller acted through HMH, one of its divisions. HMH transacts business – and/or HMH's furniture is sold – in each of the Plaintiff States and throughout the United States generally.

## CO-CONSPIRATORS

11. Various firms, persons, corporations and other business entities, known and unknown to

the States and not named as defendants, including without limitation unnamed retailers, have participated as co-conspirators with HMH in the violations alleged in this Complaint, and have performed acts in furtherance thereof.

## ANTICOMPETITIVE CONDUCT

12. Aeron chairs are high-end, ergonomically designed office chairs. Aeron chairs are very popular and sought-after.

13. HMH engaged in various anticompetitive practices to stabilize the retail price or retail price levels of Aeron chairs and to insure that they were sold at artificially inflated prices.

14. The competitive threat arose from retailers vigorously competing with one another on the internet and in brick and mortar stores.

15. As early as 1998, HMH retailers started to sell the Aeron chair on the internet at discount prices. Discount prices were also advertised in newspapers. The ability of retailers and consumers to compare prices led to price competition by HMH's retailers resulting in lower prices for consumers.

16. Price competition led to complaints by HMH retailers to HMH about discounting by HMH retailers, causing their margins to erode.

17. Responding to complaints and urging by HMH's retailers, beginning at least as early as Novermber 2001, HMH established and announced minimum prices, below which retailers were prohibited from advertising any HMH furniture.

18. HMH's minimum price policy officially started on January 1, 2002 and forbade retailers from advertising any furniture below the price HMH dictated. HMH called its

manufacturer's suggested retail price policy the "Suggested Retail Price" or "SRP" policy.

19. Any retailer that advertised below HMH's suggested retail price would be terminated or lose access to HMH product for one year.

20. The SRP policy controlled the prices at which retailers could display any price to the public, including in-store price tags, and on the retailers' own internet websites, thereby uniformly setting the retail price or retail price level.

21. HMH sought and received agreements from retailers that they would advertise Aerons at or no lower than the prices dictated by HMH, and at or no lower than the discount level set by HMH during sale periods.

22. Retailers' prices on the internet and through retailers' catalogues were generally non-negotiable. The price shown on a retailer's website or catalogue was the price at which a consumer purchased the product.

23. Some retailers who wanted to sell Aerons for less by advertising a lower price attempted to do so. When a retailer advertised below HMH's minimum price, HMH terminated the retailer's access to the Aeron chair for one year.

24. Prior to the end of the one year termination, HMH began a dialogue with terminated retailers to come back again as an HMH retailer but this time following HMH's SRP policy. Retailers often acquiesced.

25. HMH implemented its SRP policy to improve retail margins and by most accounts, the program did so. The few retailers who chose not to follow the SRP were either terminated or lost access to the Aeron they advertised at less than the SRP. The vast majority of retailers raised and maintained their retail price at the SRP level.

26. HMH's SRP policy effectively controlled the prices at which its retailers could advertise the Aeron chair through agreements with retailers and thereby effectively controlled the resale prices of its retailers.

27. HMH restrained its retailers from disclosing any discount price on any medium that could be seen by the public, including in-store shelf tags. HMH's SRP policy eliminated the advertised price as a selling tool.

28. HMH denied consumers the benefits of unrestrained price competition and restricted consumer access to price information through its control of retailers' prices in advertising.

29. These anticompetitive agreements and practices achieved the desired result in two ways. First, Aeron chair prices which had been dropping, were stabilized and then raised uniformly across retailers. Second, HMH retailers were able to maintain higher prices. As a result of both effects, consumers paid higher prices for Aeron chairs than they would have paid absent the anticompetitive agreements and practices.

30. These anticompetitive practices: (a) prevented consumers from purchasing lower-priced Aeron chairs; (b) denied consumers access to information on discounts; and (c) hindered retailers from selling at their discretion. By this action, the States seek injunctive relief to prevent HMH from engaging in, or from returning to, those practices.

31. Accordingly, the States seek in this action (1) civil penalties as provided by State statutes; and (2) injunctive relief sufficient to prohibit and prevent any recurrence of defendant's conduct.

## TRADE AND COMMERCE

32. HMH is engaged in the business of developing, arranging for the manufacture of, distributing and selling furniture, including the Aeron chair.

33. HMH sells the Aeron to consumers throughout the United States, through its retailers.

34. HMH's Aeron chairs are transported across state lines and are sold in the Plaintiff States by both HMH and its retailers.

35. HMH's Aeron chairs are marketed, promoted, and sold in interstate commerce throughout the United States.

36. The activities of HMH and its co-conspirators -- including marketing, promoting, receiving, distributing and selling furniture -- are in the regular, continuous and substantial flow of interstate commerce and have had, and do have, a substantial effect upon interstate commerce.

## INJURY TO CONSUMERS AND COMPETITION

37. As a result of anticompetitive practices by HMH, retail prices for Aerons increased and were maintained at higher prices.

38. HMH's SRP policy stabilized and raised retail price or price levels and eliminated price competition among HMH's retailers.

39. HMH's acts and practices, undertaken in conjunction with those of its co-conspirators, had the purpose or effect, or the tendency or capacity, unreasonably to restrain trade and to injure competition within and throughout the United States, by:

    (a) Establishing a resale price maintenance scheme that restricted independent

retailer pricing of Aeron chairs and that deprived consumers of the benefits of an unrestrained competitive market;

(b) Raising the prices or price levels that consumers paid for Aeron chairs above their competitive levels;

(c) Preventing consumers from obtaining competitive price information and limiting consumer choice by restricting HMH retailers from advertising differentiated prices.

(d) Coercing retailers into advertising Aeron chairs at supracompetitive prices that the retailers would not otherwise have set in exercising their independent business judgment;

(e) Coercing retailers into conducting temporary sales at certain set times of the year, for a set duration, at a set maximum discount percentage on Aeron chairs that the retailers would otherwise have conducted differently in exercising their independent business judgment;

(f) Facilitating horizontal agreements among retailers of Aeron chairs to have the same uniform advertised prices; and

(g) Coordinating efforts by HMH retailers of Aeron chairs to stop discounting by their competitors.

### FIRST CLAIM:
### CONSPIRACY IN RESTRAINT OF TRADE IN VIOLATION OF SECTION 1 OF THE SHERMAN ACT

40.     The Plaintiff States repeat the allegations in paragraphs 1 through the preceding paragraph.

41. Since at least as early as 2001, HMH and its co-conspirators have engaged in continuing unlawful contracts, combinations or conspiracies in unreasonable restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

42. The combinations, contracts and conspiracies consisted of, among other things, express or implied agreements between HMH and its retailers to set the resale price and resale price levels for Aeron chairs.

43. HMH also has entered into continuing unlawful contracts, combinations and conspiracies by coercing its retailers to set the advertised prices at the same retail level.

44. As a result of this unlawful conduct, consumers residing in the Plaintiff States have paid higher prices for Aeron chairs than they would have paid absent HMH's anticompetitive acts, and consumers were deprived of choosing from a full, competitive range of retailers who may have offered discounts because such information was stifled by HMH's SRP policy.

## SECOND CLAIM:
## STATE LAW VIOLATIONS

45. Plaintiffs repeat the allegations in paragraphs 1 through the preceding paragraph.

46. HMH's anticompetitive practices violate state antitrust statutes.

47. The aforementioned acts and practices by HMH were and are in violation of New York General Business Law § 340(1), 342, and 342-a.

48. The aforementioned acts and practices by HMH were and are in violation of 740 Illinois Compiled Statutes 10/3.

49. The aforementioned acts and practices by HMH were and are in violation of the Michigan

Antitrust Reform Act, Mich. Comp. Laws Ann. § 445.771 *et seq.*

## RELIEF REQUESTED

Accordingly, the States respectfully request judgment as follows:

50. Adjudging and decreeing that Herman Miller has violated Section 1 of the Sherman Act, 15 U.S.C. § 1, New York General Business Law §§ 340(1), 342, 342-a, 740 Illinois Compiled Statutes 10/3, and Michigan Antitrust Reform Act, Mich. Comp. Laws Ann. § 445.771 *et seq.*;

51. Awarding the States civil penalties against Herman Miller under the applicable state statutes;

52. Enjoining and restraining, pursuant to federal and state law, Herman Miller, its affiliates, assignees, subsidiaries, successors and transferees, and its officers, directors, partners, agents and employees, and all other persons acting or claiming to act on its behalf or in concert with it, engaging in any conduct, contract, combination or conspiracy to fix the resale price or resale price levels of HMH furniture by controlling the price at which its retailers may advertise, and adopting or following any practice, plan, program or device having a purpose or effect similar to the anti-competitive actions set forth above.

53. Directing such other equitable relief as may be necessary to redress Herman Miller's violations of federal and state law;

54. Awarding Plaintiffs their costs of this action, including reasonable attorneys' fees; and

55. Granting such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff States demand a trial by jury for each and every issue triable of right to a jury.

Dated: New York, New York
       March 21, 2008

                                    ANDREW M. CUOMO,
                                    Attorney General
                                    State of New York

                              By: _____
                                    JAY L. HIMES (JLH 7714)
                                    Assistant Attorney General
                                    Chief, Antitrust Bureau

                                    STATE OF NEW YORK
                                    Office of the Attorney General
                                    120 Broadway, Suite 2601
                                    New York, New York 10271
                                    (212) 416-8262

Of Counsel:

ROBERT HUBBARD
JAMES YOON
Assistant Attorneys General
Antitrust Bureau

**STATE OF ILLINOIS**
LISA MADIGAN
Attorney General
Robert W. Pratt
Chief, Antitrust Bureau
100 West Randolph Street
Chicago, IL 60601
(312) 814-3722


**STATE OF MICHIGAN**
MIKE COX
Attorney General
Suzan Sanford
First Assistant
Consumer Protection Division
G. Mennen Williams Building
525 West Ottawa, 6th Floor
P.O. Box 30755
Lansing, MI 48909
(517) 335-4809